UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM FULGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 21-cv-4218-JBM |
| ) | |
| ADMIRE, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se* and incarcerated at Hill Correctional Center, pursues an action under 42 U.S.C. § 1983 for a claim of excessive force. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**FACTS**

Plaintiff brings his complaint against Correctional Officer Admire and Warden Stephanie Dorethy in their individual capacities.

On May 21, 2018, Plaintiff had a "call-pass" from the Personal Property Office ("PPO") to get a new fan he purchased from the commissary. Correctional Officer Hillard opened the exit door of Resident Unit-2 for Plaintiff and two other inmates to go to the PPO. They exited the

housing unit and walked outside into the rain toward the PPO. When they came to an electronically controlled security gate, they stopped and waited for it to open. Correctional Officer Humes approached them from the opposite side of the gate and ordered them to return to the housing unit because it was too late to go to the PPO. When they arrived at the housing unit, Officer Hillard insisted that it was not too late and ordered them to go back to the PPO. They again exited the housing unit and proceeded to the closed security gate. When Officer Humes approached the gate, they explained that Officer Hillard had ordered them to go to the PPO. Officer Humes responded, "Fuck it, stand in the rain!" and walked away.

At this time, Correctional Officer Admire exited the security staff booth and yelled, "Go the fuck back into the house!" He then proceeded to walk quickly toward the closed security gate. Plaintiff told Officer Admire that he wanted to speak with a Lieutenant. Admire said, "I don't give a fuck what you want!" Plaintiff then responded, "I don't give a fuck what you want – you ain't got no kids out here." Admire radioed the security tower officer to open the gate. When the gate opened, Admire walked toward Plaintiff and told him to either go back to the house or cuff-up. Plaintiff turned around and put his hands behind his back. Admire twisted Plaintiff's left hand and said, "You must not know who I am!" Plaintiff responded, "I don't give a fuck who you are." Admire aggressively grabbed Plaintiff's right hand, twisted it, and placed handcuffs on his wrists.

After Plaintiff was in handcuffs, Admire executed a "sweep-kick" of Plaintiff's feet. Unable to prevent himself from falling, Plaintiff slammed onto the wet concrete sidewalk and was unable to move. He hit his head so hard that he became dazed and confused. Admire pounced on his back and began pounding his knees on Plaintiff's back and neck. Lieutenant Carothers ran toward them while screaming at Admire to get off the Plaintiff. Lieutenant Carothers and another correctional officer helped Plaintiff to his feet and escorted him to the segregation unit. Lieutenant

Carothers ordered Sergeant Smith to escort Plaintiff to the health care unit for a medical evaluation. During the evaluation, Plaintiff states that he was still dazed and confused and was unable to describe his injuries and pain, so Sergeant Smith told the medical staff what had happened.

The following day, Plaintiff states that he was in extreme pain throughout his body, had developed a "hard lump (mass) on his right palm," suffered excruciating pain in his right pinkie finger, and had a constant headache. Plaintiff received medications, medical testing, and a medical device to treat his injuries. Plaintiff continues to suffer from headaches that are so painful he cannot sleep. He has severe loss of mobility in his right hand and a painful lump on his right palm. Plaintiff also states that he suffers from emotional distress whenever he is traveling with a "call-pass" and has extreme anxiety when questioned by security staff.

## ANALYSIS

As to the claim of excessive force against Correctional Officer Admire, Plaintiff must show that the force was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). This is so, as prison officials considering the use of force must balance the threat presented to inmates and prison officials against the possible harm to the inmate against whom the force is to be used. *Id.* at 320. "[W]hile a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimis* use of physical force.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001) (internal citations omitted). The Court must balance the amount of the force used against the need for the force. *Reid v. Melvin*, 695 Fed.Appx. 982, 983-84 (7th Cir. 2017). Based on Plaintiff's allegations, the Court finds that he has stated a claim against Admire for excessive force.

Plaintiff sues Stephanie Dorethy, the Warden of Hill Correctional Center, in her individual capacity and alleges that she promulgated a policy, practice, or custom that protects correctional officers under her supervision who use excessive force against inmates from disciplinary and/or criminal liability. He further alleges that her failure to take disciplinary action, or any other action, to curb the known pattern of excessive force by Defendant Admire, constitutes deliberate indifference to Plaintiff's safety and contributed to the incident on May 21, 2018.

Plaintiff must allege that the official participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Here, Plaintiff has failed to plead Warden Dorethy's knowledge of, or personal participation in the alleged conduct, and so fails to plead an individual capacity claim against her. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (internal quotations and citations omitted) (individuals not liable merely for their supervisory role over others).

While Plaintiff might be construed as pleading an official capacity claim against Warden Dorethy, it is not enough for Plaintiff to allege that a correctional officer employee violated his constitutional rights. He must show that his injury was the result of the Warden's official policy or custom. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80 (1986); *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). To adequately plead a claim under *Monell*, the allegations "must allow [the court] to draw the reasonable inference that the [defendant] established a policy or practice" which caused the injury. *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011). "The Complaint must provide enough facts, if proven to be true, to support an inference that the implicit policy was so widely followed as to represent an official policy for which the [defendant] is liable." *Hare v. County of Kane*, No. 14-1851, 2014 WL 7213198, at *3 (N.D. Ill. Dec. 15, 2014).

A claim concerning an isolated incident is generally insufficient to sustain a claim. The practice must have been "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (citing *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). "There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) (internal citations omitted). As Plaintiff pleads only the incident involving himself, he fails to plead that Warden Dorethy is liable in her official capacity under *Monell*. *See Gaston v. Ghosh*, No. 11-6612, 2017 WL 5891042, at *14 (N.D. Ill. Nov. 28, 2017). Isolated incidents do not amount to a policy, custom, or practice under the *Monell* standard. *Id.* (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015) (recitation of isolated incidents not enough to not add up to a pattern of behavior that would support an inference of a custom or policy). Therefore, Plaintiff's claim against Warden Dorethy is DISMISSED.

**IT IS THEREFORE ORDERED:**

1) Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an Eighth Amendment excessive force claim against Defendant Admire. Any additional claims shall not be included in the case, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendant Stephanie Dorethy is DISMISSED. The Clerk is directed to terminate her as a party.

3) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, in order to give Defendant notice and an

opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

4) The Clerk will attempt service on Defendant by mailing Defendant a waiver of service. Defendant has 60 days from the date the waver is sent to file an answer. If Defendant has not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dipositive motion deadlines.

5) If Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in Plaintiff's complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6) Defendant shall file an answer within 60 days of the date the waiver of service is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendant. Therefore, no response to the answer is necessary or will be considered.

7) This District uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of

motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to defense counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the deposition.

9) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and phone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10) If Defendant fails to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

11) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED:  March 15, 2022

                                                             s/ Joe Billy McDade  
                                                            JOE BILLY McDADE  
                                                            UNITED STATES DISTRICT JUDGE